**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN KRATZ,**

                              **Plaintiff,**

                            v.                                    5:06-CV-446
                                                                             (FJS/GHL)

**VILLAGE OF SOLVAY, DAVID**
**PETTITT, ANTHONY MODAFERI,**
**and JOHN DOE ONE,**

                              **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**OFFICE OF GEORGE S. MEHALLOW**         **GEORGE S. MEHALLOW, ESQ.**
201 South Main Street
Suite 310 B
North Syracuse, New York 13212
Attorneys for Plaintiff

**COSTELLO, COONEY, & FEARON, PLLC**     **MICHAEL A. TREMONT, ESQ.**
205 South Salina Street                                    **EDWARD G. MELVIN, ESQ.**
4th Floor
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      Plaintiff filed this § 1983 action alleging (1) retaliatory termination for reporting improper dumping of sewage and toxic substances in violation of the New York State Environmental Conservation Law to the New York State Department of Environmental

Conservation ("DEC") and possibly[1] (2) a procedural due process claim related to his termination.

Currently before the Court is Defendants' motion for summary judgment on the following grounds: (1) Plaintiff has failed to show a *prima facie* First Amendment Retaliation claim because there was no protected speech and no causal connection; (2) assuming Plaintiff established a *prima facie* case, Defendants are entitled to summary judgment because Defendant Village of Solvay ("Village") would have terminated Plaintiff anyway; (3) Plaintiff's due process claim is without merit as Plaintiff received appropriate process; and (4) Plaintiff has failed to provide evidence to support his theory of municipal liability against Defendant Village.

## II.  BACKGROUND

Defendant Village hired Plaintiff on May 3, 1999, in the Village's Department of Public Works ("DPW").  Plaintiff was a union member of AFSCME New York Council 66, Local 815. When he was hired, Plaintiff received an Employee Handbook that discussed insubordination, attendance, and other employee obligations.  Plaintiff was also subject to a collective bargaining agreement that set hours of work and provided a grievance procedure for disagreements regarding discipline.

In April of 2003, Defendant Village terminated Plaintiff's employment.  Plaintiff, with his union, filed a grievance that went to arbitration and resulted in a finding that Defendant Village had "just cause" to terminate Plaintiff's employment.

---

[1] In reviewing Plaintiff's complaint, the Court does not believe that it states a due process claim; however, Defendants have chosen, likely out of an abundance of caution, to respond as though Plaintiff has stated such a claim.

## III.  DISCUSSION

### A.  Standard of review

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).  First the moving party must demonstrate the absence of a genuine issue of material fact; then, the opposing party must present evidence, beyond the pleadings, to satisfy every element of the claim and to show a genuine issue for trial.  *See id.* (citations omitted).  The court must resolve all ambiguities and draw all permissible inferences in favor of the opposing party.  *See id.* (citation omitted).

### B.  Plaintiff's First Amendment claim

Defendants assert that Plaintiff has failed to establish a *prima facie* case of retaliation because Plaintiff has not shown that he engaged in protected speech or that there is a causal connection between the alleged protected speech and his alleged adverse employment action.  Defendants further assert that, assuming Plaintiff can establish a *prima facie* case, they are entitled to summary judgment because they would have terminated Plaintiff's employment regardless of the alleged protected speech.

"To prevail on a First Amendment retaliation claim, a public employee must establish: '[1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action.'"  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000) (quotation and other citations omitted).

Plaintiff has testified that the only evidence he has of a causal connection is the temporal proximity of his termination to his contacting the DEC. *See* Deposition of John C. Kratz dated June 14, 2007, at 111-13, 118. The causal connection must be sufficiently strong to support an inference that the "protected speech was a 'substantial motivating factor' in the employment decision." *Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F. Supp. 2d 409, 416 (E.D.N.Y. 2007); *see also Diesel*, 232 F.3d at 107 (quotation omitted). Such connection may be shown circumstantially by a showing of temporal proximity. *See Berrios*, 518 F. Supp. 2d at 416-17. However, the inference does not arise where the adverse employment action is a part and the product of a period of progressive discipline that started prior to the protected activity. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Defendants have provided a long history of progressive discipline. On January 3, 2000, Plaintiff received an oral reprimand for abusive comments and behavior towards a resident.[2] After receiving this oral reprimand, Plaintiff received a written reprimand for leaving work early and calling in sick. Plaintiff acknowledged he was insubordinate on January 9, 2002, but did not receive formal discipline. Plaintiff was involved in a pushing incident with a coworker but did not receive formal discipline. On June 20, 2002, Plaintiff had discussions with Defendant Pettitt about his irresponsibly leaving a building and equipment unsecured and Plaintiff leaving work and claiming to be sick, but Plaintiff did not receive formal discipline. On June 21, 2002,

---

[2] Plaintiff has admitted, except where otherwise noted, that this and the following incidents took place. His only "disagreement" with Defendants' statement of facts concerns the issue of whether Defendants formally disciplined him as a result of some of these incidents. He also points out that others did not receive discipline for some of these actions and that leaving work early for "no pay" was common practice. *See* Defendants' Statement of Undisputed Material Facts *and* Plaintiff's Response thereto at ¶¶ 8-37.

Plaintiff threw the work order into the garbage, refused to complete a work order, was found lying on a picnic table, and left early, which was documented in a Memo of Job Performance. On July 17, 2002, Plaintiff failed to dump bad materials from a truck, got into an argument with Defendant Pettitt on the radio, and left before his shift ended, but did not receive formal discipline. On October 2, 2002, Plaintiff refused an assignment and had a verbal confrontation with his crew leader which was documented in an Inner Office Memorandum. On October 3, 2002, Plaintiff left his job after being advised that he would be abandoning his job if he left early. On October 4, 2002, Plaintiff was upset with Defendant Pettitt for having a couch removed from the DPW building, and he left the couch in the DPW's handicapped parking space and lied about how it got there, which was documented in an Inner Office Memorandum. On October 4, 2002, Plaintiff also left work early without permission.

On October 7, 2002, Plaintiff received a five-day unpaid suspension based on his past work history, his aggressive and insubordinate behavior, and the abandonment of his job on October 4, 2002. Upon returning from his suspension on October 14, 2002, Plaintiff left work early after learning he would not be paid for the five days. On October 17 and 18, 2002, Plaintiff called Defendant Pettitt names but did not receive any disciplinary action.

On October 18, 2002, Plaintiff requested an indefinite leave based on Defendant Pettitt's alleged harassment of him. Defendant Village requested medical documentation, which it did not receive, and Defendant Village did not approve the leave; but Plaintiff did not receive any disciplinary action until his termination. Despite not receiving permission, Plaintiff did not work through November 20, 2002, although he did go to the DPW to talk to employees and make photocopies. In November of 2002, Defendant Pettitt asked Plaintiff to leave Defendant

Village's transfer station and refrain from picking trash during non-working hours which resulted in a verbal exchange. On November 20, 2002, Plaintiff was supposed to return to work but called in sick, but he did not receive any discipline. On November 27, 2002, Plaintiff was assigned to remove snow and ice from Village sidewalks which he refused to do; Plaintiff spoke to his union representative and was given a new assignment. On December 3, 17, and 19, 2002, Plaintiff left work early; and, on December 4, 6, 11, and 18, 2002, Plaintiff did not show up to work.

Furthermore, On January 20, 2003, Plaintiff refused to dump Christmas trees at the transfer station as Defendant Pettitt directed him to do, although it was part of his job duties and Defendant Pettitt unsuccessfully tried to show Plaintiff where to dump them properly because of an alleged conflict of interest due to his complaint to the DEC. Defendant Village sent Plaintiff home for the day. The parties dispute whether this was an unpaid suspension for the balance of the day and whether Plaintiff received this disciplinary notice. On March 7, 2003, Defendant denied Plaintiff's request for unpaid leave from May 1, 2003, to November 1, 2003, to construct his new home.

Plaintiff requested vacation days for April 9, 10, and 11, 2003, which Defendant Village approved, and April 14 and 15, 2003, which Defendant Pettitt informed him needed to be a leave of absence. Plaintiff did not request or receive leave but did not come to work on April 14 and 15, 2003. Plaintiff had told Defendant Pettitt he would work those days if he did not call in sick. Plaintiff was in Las Vegas and arranged to have a co-worker call in sick for him. Defendant Modaferri, the Village Mayor, testified that this was the last straw; and the Village Board, in a unanimous decision, terminated Plaintiff on April 16, 2003.

Plaintiff alleges that he called the DEC in September of 2002 and told Crew Leader Dinneen about the call. Plaintiff met with the DEC on October 24, 2002. On January 30, 2003, Plaintiff informed Defendant Pettitt that he had filed a complaint with the DEC. The DEC investigated Defendant Village's transfer station on April 4, 2003. Defendant Pettitt testified that he first learned of the DEC investigation when the DEC arrived at the transfer station. The DEC and Defendant Village entered into a Consent Order with a $1,500 fine due to standing water and solid waste violations, which were not related to Plaintiff's complaints.

The Court finds that this record of conduct and discipline constitutes a period of progressive discipline starting in the year 2000 leading up to Plaintiff's termination. Accordingly, the Court finds that Plaintiff's progressive discipline pre-dates his first contact with the DEC in September of 2002. Therefore, Plaintiff is not entitled to an inference of causation based on the temporal proximity between his complaint to the DEC and the termination of his employment. Furthermore, because Plaintiff admits he has no evidence linking his DEC complaint with his termination other than temporal proximity, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation[3] and grants Defendants' motion for summary judgment.[4]

---

[3] The parties also dispute whether Plaintiff's complaints to the DEC are protected speech. The Court finds that it need not reach this issue because Plaintiff cannot establish the requisite causal connection needed to establish a *prima facie* case of retaliation.

[4] Although the Court need not reach this issue, even if Plaintiff established a *prima facie* case of retaliation, Plaintiff's history of insubordinate conduct and absenteeism would likely be sufficient to grant Defendants' motion for summary judgment on the ground that Defendants would have terminated Plaintiff's employment even if he had not called the DEC. *See Diesel*, 232 F.3d at 107 (quoting *Mount Healthy* [*City Sch. Dist. Bd. of Educ. v. Doyle*,] 429 U.S. [274,] 287, 97 S. Ct. 568[, 50 L. Ed. 2d 471 (1977)]).

**C.     Plaintiff's due process claim**

Although Defendants have moved for summary judgment on a procedural due process claim, the Court finds that, after reviewing the Complaint and noting the absence of any mention of this claim in Plaintiff's other submissions, it does not appear that Plaintiff is asserting a procedural due process claim.[5]  Assuming Plaintiff is making a procedural due process claim, Plaintiff made the following admissions: (1) that he had the right to file a grievance and go to arbitration under the applicable collective bargaining agreement; (2) that he and the union did file such a grievance and the case went to arbitration; (3) that he had representation, presented evidence, testified, and cross-examined witnesses; and (4) that he did not challenge the arbitrator's decision that Defendant Village had just cause to terminate his employment in court or challenge his representation.  *See* Defendants' Statement of Undisputed Material Facts at ¶¶ 38-40 and Plaintiff's Response thereto.  Based on these admissions, the Court finds that any such claim would fail because Plaintiff received sufficient post-deprivation process.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) (citations omitted).  Accordingly, the Court grants Defendants' motion for summary judgment to the extent that Plaintiff asserts a procedural due process claim.[6]

---

[5] Based on the abbreviated nature of Plaintiff's Memorandum of Law, the Court cannot determine whether Plaintiff intentionally declined to oppose this portion of Defendants' motion.

[6] Accordingly, the Court will not address Defendant Village's municipal liability argument.

## IV.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

Dated: June 1, 2009
    Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge